**Timothy D. WALKER, Plaintiff–Appellant,**

Joseph Fischetti, Edward Grenier, Mark Johnston, John F. Moffo, Nathaniel Shulde, James W. Burns, Mark Gostyla, Russell Paltauf, Fernando Ramirez, Dale Salmon, Alexander Cruz, Ivan Hernandez, David Krasnowski, Richard T. Paltauf, Robert Stokes, Gerald Zarella, Consolidated–Plaintiffs–Appellants,

v.

CITY OF WATERBURY, Defendant–Cross–Claimant–Appellee,

Waterbury Financial Planning and Assistance Board, Defendant–Appellee,

Waterbury Fire Fighters Association, Defendant–Cross–Defendant.

No. 06–2011–cv.

United States Court of Appeals, Second Circuit.

Nov. 1, 2007.

**60**

John R. Williams, New Haven, CT, for Appellants.

Linda L. Morkan (Richard F. Vitarelli, Stephen W. Aronson, on the brief), Robinson & Cole LLP, Hartford, CT, for City of Waterbury.

Gary S. Starr, Shipman & Goodwin LLP, Hartford, CT, for Waterbury Financial Planning and Assistance Board.

PRESENT: Hon. ROBERT A. KATZMANN and Hon. DEBRA ANN LIVINGSTON, Circuit Judges, Hon. EDWARD R. KORMAN,* District Judge.

### SUMMARY ORDER

Plaintiffs–Appellants appeal from the April 20, 2006, final judgment of the United States District Court for the District of Connecticut (Kravitz, J. ), dismissing their claims for failure to join a necessary and indispensable party.

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review. In brief, Plaintiffs, firefighters employed by the City of Waterbury (the "City"), brought claims under 42 U.S.C. § 1983 against the City, alleging that actions taken by the City affecting Plaintiffs' pension benefits deprived Plaintiffs of due process and equal protection. The District Court determined that the Waterbury Financial Planning and Assistance Board (the "Board"), an entity created by the State of Connecticut in Special Act 01–1 to superintend and manage the City in its long-running fiscal crisis, was a necessary party that should be joined if feasible, and Plaintiffs amended their complaint to name the

Board as an additional defendant. After determining that the Board was an arm of the State and therefore entitled to sovereign immunity under the Eleventh Amendment, the District Court dismissed the action in its entirety because it found that the Board was a necessary and indispensable party and that, accordingly, Plaintiffs could not proceed against the City in the absence of the Board.

Plaintiffs raise two issues on appeal. First, they argue that the Board is not entitled to sovereign immunity. Second, they argue that even if the Board is entitled to sovereign immunity, the Board is not an indispensable party and that Plaintiffs should be permitted to proceed against the City alone.

The Eleventh Amendment entitles states to sovereign immunity, and this immunity "extends . . . to entities considered 'arms of the state,' " McGinty v. New York, 251 F.3d 84, 95 (2d Cir.2001), such as state agencies, Mancuso v. N.Y. State Thruway Auth., 86 F.3d 289, 292 (2d Cir. 1996). Unless Eleventh Amendment immunity has been waived by the State or abrogated by Congress—which Plaintiffs do not allege—private plaintiffs cannot sue an entity that enjoys this immunity in federal court.

In considering whether an agency is an arm of the State and therefore entitled to sovereign immunity, we review the District Court's factual findings for clear error and its legal conclusions de novo. McGinty, 251 F.3d at 90. Whether an entity is an arm of the State depends on six factors: (1) how it is referred to in its documents of origin, (2) how its governing members are appointed, (3) how it is funded, (4) whether its function is traditionally one of local or state government, "(5) whether the state has a veto power over the entity's actions,

---

* The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

and (6) whether the entity's financial obligations are binding upon the state." *Id.* at 95–96. When all six factors do not align, we also consider "whether a suit against the entity in federal court would threaten the integrity of the state and expose its treasury to risk" and remain mindful of our "concern for the state fisc." *Id.* at 96; *see also id.* at 100 (" '[T]he vulnerability of the State's purse [is] the most salient factor' when deciding whether sovereign immunity applies.") (second alteration in original) (quoting *Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 48, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)).

█ Our analysis of these six factors leads us to conclude that the District Court was correct in determining that the Board is an arm of the State of Connecticut and is therefore entitled to immunity. Of particular relevance are the following facts. First, we routinely look to state decisional law when we evaluate whether a governmental entity is entitled to sovereign immunity, *see, e.g., Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 244 (2d Cir.2006); *McGinty,* 251 F.3d at 96; *Mancuso,* 86 F.3d at 294, and the Connecticut Supreme Court has described the Board as "a *state agency* specially created pursuant to § 10 of [Connecticut Special Act] 01–1." *Sch. Adm'rs v. Waterbury Fin. Planning & Assistance Bd.,* 276 Conn. 355, 885 A.2d 1219, 1221 (2005) (emphasis added).

Second, six of the Board's seven members are appointed by State officials or elected in statewide elections. Four members are appointed by the Governor of Connecticut; one member is, or is designated by, the Connecticut State Treasurer, who is elected in a statewide election, *see* Conn. Const. art. IV, § 1; and one member is, or is designated by, the Secretary of the Connecticut Office of Policy and Management, who is appointed by the Governor, *see* Conn. Gen.Stat. § 4–65a.

That a majority of the Board's members are accountable to the statewide electorate—either directly or through the elected officials who appoint them—strongly indicates that the Board is a state agency rather than an instrumentality of the City. *See Woods,* 466 F.3d at 244 (stating that "circumstances [are] indicative of an entity's operation as an arm of the state" when members are "selected in state-wide elections" or are "appointed by state officials"). *Compare Mancuso,* 86 F.3d at 295 (concluding that a finding of immunity was "favor[ed]" when "all three board members [were] appointed by the Governor"), *with Woods,* 466 F.3d at 244 (concluding that this factor "weigh[ed] against … immunity" when "members … [were] to be elected locally by voters in each school district").

Third, a money judgment against the Board would risk exposing the State's treasury to liability. The parties do not dispute that the State would be required to satisfy a judgment rendered against the Board in the first instance, and "the presence or absence of [the City's] undertaking to indemnify the [Board]" has no bearing on whether the Board is entitled to sovereign immunity. *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 431, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997); *see also Local 1339, Int'l Ass'n of Firefighters v. City of Waterbury,* 274 Conn. 374, 876 A.2d 511, 515 (2005) ("[Waterbury's financial] crisis threatened not only the city, but also the fiscal reputation of the state, which acts essentially as guarantor of certain of the city's obligations." (emphasis added)). We therefore agree with the District Court and find that, because a judgment against the Board would bind the State to a financial obligation, the most important *McGinty* factor weighs in favor of the Board's sovereign immunity.

Accordingly, we affirm the District Court's finding that the Board is entitled

62

to sovereign immunity under the Eleventh Amendment.

Turning to the question whether the Board is an indispensable party pursuant to Fed.R.Civ.P. 19(b), we note that events that have transpired during the pendency of this appeal—namely, the Board's decision on January 23, 2007, to dissolve itself after having determined that the City had met certain financial benchmarks—are at least potentially relevant to this determination. District courts are afforded substantial discretion in weighing the Rule 19(b) factors and in determining "how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1604, at 45–46 (1st ed. 1972), *quoted in Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir.1984). The decision whether to dismiss an action for failure to join an indispensable party is thus "more in the arena of a factual determination than a legal one," and our review is limited to the question whether the District Court has abused its discretion. *Envirotech*, 729 F.2d at 75. Accordingly, we conclude that the changed circumstances in this matter are best considered in the first instance by the District Court. We therefore vacate the District Court's order dismissing the case on Rule 19(b) grounds so that the District Court may consider on remand whether and to what degree the Board's nonexistence affects its earlier Rule 19(b) determination.

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED** in part, **VACATED** in part, and **REMANDED.**